UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| FELIX DANIEL VEIGA,<br><br>Petitioner,<br><br>v.<br><br>PAMELA BONDI, et al.,<br><br>Respondent. | Case No. 2:25-cv-02168-TMC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Felix Daniel Veiga is an individual who is detained at the Northwest Immigration and Customs Enforcement Processing Center ("NWIPC") in Tacoma, Washington. Veiga petitions the Court under 28 U.S.C. § 2241 for relief from physical custody, arguing that his detention has become indefinite in violation of the Immigration and Nationality Act ("INA"). Dkt. 1. For the reasons stated below, the Court GRANTS the petition.

## I.   BACKGROUND

**A.   Petitioner's re-detention**

Petitioner is a native and citizen of Cuba who was admitted to the United States on November 21, 2008, under the Cuban Family Reunification Parole Program. Dkt. 9 ¶¶ 3–4; Dkts. 1-3, 1-4. He became a lawful permanent resident in July 2010. Dkt. 1-3. But in August 2011, he was convicted of possession of fifteen or more unauthorized "access devices" in

violation of 18 § U.S.C. 1029(a)(3) and was sentenced to 48 months in prison. Dkt. 9 ¶¶ 5–6; Dkts. 1-3, 1-5. On July 10, 2013, while Petitioner was still incarcerated, an immigration judge ("IJ") charged him as removable under INA § 237(a)(2)(A)(i) for having been convicted of a crime of moral turpitude within five years of admission to the United States. Dkt. 9 ¶ 7; Dkt. 1-3.

Petitioner agreed to proceed with an order of removal, filing a motion for stipulated removal and waiver on an immigration hearing. Dkt. 9 ¶¶ 8–9. The IJ ordered Petitioner removed on August 27, 2013. *Id*. ¶ 10. The ICE Office of Enforcement and Removal Operations ("ERO") completed a post-order custody review, found that "ERO was not successfully removing Cubans at that time," and placed Petitioner on an order of supervision on March 5, 2014. *Id*. ¶ 11; Dkt. 1-2. The parties agree that Petitioner was never in ICE custody during this time, and that he was released from prison on May 28, 2014. Dkt. 1 at 6; Dkt. 9 ¶¶ 8, 11.

On May 30, 2025, ERO revoked Petitioner's order of supervision and took him into ICE custody to effect his removal. Dkt. 9 ¶ 13.

**B.      Removal of detainees to Cuba**

Petitioner claims that his removal to Cuba is just as unlikely as it was in 2013 because "Cuba has been extremely reluctant to accept individuals with criminal records." Dkt. 1 at 6. Although ICE arrested 419 Cuban citizens in fiscal year 2025, only 138 Cubans were removed, and only 32 of those had criminal convictions. *Id*. at 6–7. Petitioner asserts that there are at least 34,000 Cubans with final orders of removal, "due in large part to criminal convictions." *Id*. at 7 (quoting Lindsay Daniels, *The End of Special Treatment for Cubans in the U.S. Immigration System: Consequences and Solutions for Cubans with Final Orders of Removal*, 122 Dick. L. R. 2, 707 (2018)). "Removals have increased in the 2025 calendar year," with 643 Cubans deported to Cuba and 501 deported to third countries (primarily Mexico), "but still are nowhere near the pace required to reasonably process the backlog of individuals with pending removal orders." *Id*.

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 2

at 7–8. According to Petitioner, there is therefore "no indication that the Cuban government's policy of refusing to accept detainees with criminal records has materially changed even as the United States government has begun re-arresting detainees who were previously released under orders of supervision." *Id*. at 9. Petitioner notes that ICE has not obtained a travel document from Cuba for him. *Id*.

In support of their response, Respondents submitted a declaration from Enrique Rodriguez, an ICE ERO officer at NWIPC. Dkt. 9. Rodriguez states that "ERO has recently removed Cubans under final order to Cuba through a nomination process which ERO HQ and the Cuban government participate in. Given Petitioner is a Cuban under final order, he is eligible to be included in the nomination process and his case is pending review of the Cuban government for a travel document. ERO has not received any information indicating Cuba will not accept Petitioner on his order of removal." Dkt. 9 at 3.

C.     **Procedural history**

On October 31, 2025, Petitioner filed his habeas petition[1] and moved to appoint the Federal Public Defender as counsel. Dkts. 1, 3. Magistrate Judge Michelle L. Peterson appointed counsel on November 4, 2025 and set a briefing schedule. Dkts. 5, 6. Respondents filed a return brief on November 11, 2025. Dkt. 8. Petitioner filed his traverse on November 19, 2025, five days after the deadline to do so expired. Dkt. 10. Respondents filed a surreply that same day. Dkt. 11.

---

[1] Petitioner's habeas petition originally sought injunctive relief restricting his removal to a third country in addition to release from custody. Dkt. 1 at 20. This Court could provide equitable relief on those claims if Petitioner met the standard for a permanent injunction because he invoked this Court's federal question as well as habeas jurisdiction. Dkt. 1 at 3; *see Roman v. Wolf*, 977 F.3d 935, 941–42 (9th Cir. 2020). But because Petitioner did not maintain this claim in his traverse and did not respond to Respondents' arguments that the claim is constitutionally unripe, *see* Dkt. 8 at 12, the Court considers these claims abandoned.

## II. LEGAL STANDARD

"Writs of habeas corpus may be granted by . . . the district courts . . . within their respective jurisdictions." 28 U.S.C. § 2241(a). A habeas petitioner must prove by the preponderance of the evidence that he is "in custody in violation of the Constitution or laws or treaties of the United States." *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004); 28 U.S.C. § 2241(c).

The re-detention and revocation of supervised release of a noncitizen subject to a final order of removal is governed by 8 C.F.R. § 241.13(i). ICE may revoke a noncitizen's release (1) if they violate the conditions of their release or (2) if, "on account of changed circumstances," ICE determines there is a significant likelihood the noncitizen may be removed in the reasonably foreseeable future. 8 C.F.R. § 241.13(i)(1), (2).

In *Zadvydas v. Davis*, the Supreme Court held that the INA does not authorize "indefinite, perhaps permanent, detention" of noncitizens subject to final orders of removal. 533 U.S. 678, 699 (2001). Applying the doctrine of constitutional avoidance, the Court explained that such an interpretation was necessary "to avoid a serious constitutional threat." *Id.* As the Court recognized, "[a] statute permitting indefinite detention of [a noncitizen] would raise a serious constitutional problem [under] . . . [t]he Fifth Amendment's Due Process Clause." *Id.* at 690. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Id.* The Court concluded that, "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The "presumptively reasonable" period for detention following a removal order is six months. *Id.* at 701.

### III.  DISCUSSION

Petitioner is a noncitizen who has been present in the United States for 17 years. Dkt. 1-3. He is entitled to the protections of the Due Process Clause. *Zadvydas*, 533 U.S. at 693. The parties disagree as to whether the six-month "presumptively reasonable" grace period runs only during ICE custody or, as Petitioner proposes, "runs unabated once Petitioner's removal order was final and does not run solely during any period when Petitioner was detained." Dkt. 10 at 1−2. The Court need not resolve that issue here, because, even under Respondents' standard, the presumptively reasonable period expired on November 26, 2025. Dkt. 8 at 4.

Petitioner's evidence showing (1) the government's failure to deport him for 17 years, after it first found that "ERO was not successfully removing Cubans at that time," Dkt. 9 ¶ 11; (2) a backlog of over 34,000 Cubans with final removal orders largely untouched by a few hundred removals each year, Dkt. 1 at 7 n.5; (3) that the Cuban government is especially unlikely to accept removal of Cubans convicted of criminal offenses, *id*. at 6–10; and (4) that the government detained Petitioner without securing a travel document and failed to remove him between May and November, *see id*. at 6, "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701.

The burden thus shifts to the government to "respond with evidence sufficient to rebut that showing." *Id*. at 701. In response, the government represents that Petitioner is eligible for a "nomination process" for removal to Cuba as he is under a final order of removal, and that the Cuban government is reviewing his case. Dkt. 9 ¶ 14. Respondents argue that Petitioner "provides no support for his assertion that the alleged backlog of Cuban nationals somehow impacts Petitioner." Dkt. 8 at 8–9.

     But Respondents—who have the burden here—do not explain why Petitioner's situation is any different from that of the 34,000 or so other Cubans who remain in the United States despite a final order of removal and are thus eligible for the same "nomination process." *See* Dkt. 1 at 7 n.5; Dkt. 9 ¶ 14. Respondents do not shine any light on that process or what factors the Cuban government considers (such as, for example, the type or severity of the noncitizen's crime) which indicate Petitioner will likely be removed. Nor do Respondents discuss how long the nomination process normally takes, what additional steps remain before the process is complete, whether the Cuban government has indicated it may accept Petitioner, or even when Respondents contacted the Cuban government and initiated the process for Petitioner. In fact, Respondents do not describe any changed circumstances apart from an increased number of deportations to Cuba—643 in 2025. Dkt. 8 at 8–9 (citing Dkt. 1 at 7). Alone, this representation is not persuasive enough to rebut Petitioner's showing that his detention has become indefinite.

     Because there is not a likelihood that Cuba will accept Petitioner in the reasonably foreseeable future, his detention is no longer permitted by the INA as construed in *Zadvydas*. *See* 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner's detention is unlawful and he must be released. *See Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *7 (E.D. Cal. July 16, 2025) (allowing release upon a finding that removal was not reasonably foreseeable). The Court therefore GRANTS the petition for writ of habeas corpus. Dkt. 1.

### IV.   CONCLUSION

     For these reasons, the Court GRANTS the petition for writ of habeas corpus. Dkt. 1. Respondents and all their officers, agents, employees, attorneys, and persons acting on their behalf or in concert with them are ORDERED to release Petitioner Felix Daniel Veiga from

custody, under the conditions of his most recent order of supervision, within ONE day of this Order.

Dated this 9th day of December, 2025.

_____
Tiffany M. Cartwright
United States District Judge

ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS - 7